# EXHIBIT G

## Best Practices Guide - Contract Surety

### I. Coverage

**I a Coverage Verification** - Documents and other information needed to confirm the existence of coverage with respect to payment and performance bonds include copies of the bonds and the contract secured by the bonds. The latter is required in order to show that the contract described in the bonds was in fact executed and that the bond ties into an executed contract.

**I b Response** - Generally, notice and other correspondence related to claims should be acknowledged within 14 days of receipt. However, attention must be paid to any statutory, regulatory or contractual (e.g., AIA Document A312) requirements that may specify an earlier response.

**I c Recognition of Issues** - The initial notice of claim should be reviewed in conjunction with the bond to determine if there exist preliminary issues of coverage. Acknowledgments should address issues of coverage that are apparent, based on a review of the initial notice of claim. These issues include limitations, standing (is the party making the claim the obligee described in the bond or a payment bond claimant as defined in the bond or in applicable statutory or judicial law) and coverage (e.g., are the items claimed covered under the terms of the bond or applicable law). The acknowledgment should reserve any rights and defenses of the surety arising from these issues.

### II. Investigation / Negotiation / Settlement

**II a Request for Relevant Information** - The file should document that relevant information was gathered which enabled F&D to fairly determine its obligations. The purpose of the investigation is to develop the surety's factual and legal bases for responding to the claim. Generally, the surety has a duty to conduct an independent investigation of the claim. In this context, "independent" means free from the influence and control of the principal. The surety's independent investigation involves the collection and analysis of adequate information from which it can by itself properly determine its obligations and rights. The sources of this information are the records and personnel of the obligee (and its design professional or other project representative), claimant, the principal, and F&D's underwriting records.

**Performance Bond Claims.** The investigation of performance bond claims varies from case to case and is dependent on the facts and circumstances of each particular claim situation. Demands form obligees can range from a complaint concerning the need for some minor correction on a completed project to a declaration of default on project where substantially no work has been performed. Listed below are categories and types of information that are often relevant to the investigation of a performance bond claim. The list is not necessarily complete. It is designed for the responding to a serious default situation, with all the attendant issues. The circumstances of each particular case will dictate the character, kind and quantity of information required to conduct a proper investigation.

Relevant Information to be obtained from the obligee or its agents may include :
- The specific basis for the claim/alleged default
- Copies of the executed bonds
- A complete set of contract documents, including addenda and approved change orders
- The last paid requisition
- Pending change orders
- Job correspondence and documents, e.g., project minutes, status reports, etc., relevant to work issues and job progress
- Backcharges or other assessments against the contract price
- Any notices of claims from laborers or materialmen


EXHIBIT 24

As-planned and current project schedules

The names, addresses and phone numbers of the obligee's employees and agents (e.g., contracting officer, architect/engineer, construction manager, project manager, attorney) who know the most about the facts of the alleged default

**Relevant information to be obtained from the principal may include:**

A specific response to the obligee's allegations

A complete set of the contract documents

A copy of the last paid requisition and any pending requisitions

Accounts payable ledger

Accounts receivable ledger

Current information on the status of payroll withholding taxes, union trust fund payments, and insurance payments

The extent and nature of any bank debt or other debt and what, if any, security exists with respect to such debt

The original estimate for the project

Correspondence related to the job

Current cost summaries or cost accounting detail for the project

Current status of any unbonded work

Current balance sheet, income statement and cash flow statement

Current statements of financial condition of any individual indemnitors

The names, addresses and phone numbers of the principals employees and agents (principal officers, project manager, project superintendent, estimators, attorneys, accountants) who know the most about the facts of the alleged default)

**Relevant information to be obtained from the underwriters and/or agent may include:**

The bond underwriting files, including the bond forms

The general indemnity agreements

Financial statements and reports

Any general status inquiry forms returned by the obligee

Bid tabulations

**Payment Bond Claims.** Listed below are kinds and categories of information needed generally to investigate payment bond claims. The evidence required to determine liability under the payment bond for a particular claim will depend on the facts and circumstances peculiar to the claim. There are basically two types of payment bond claims: disputed and undisputed. And there are fundamentally two types of principals against whom claims are made: those who are financially able to resolve the claim and those who are not. If the principal does not dispute the claim and is able to pay it, then it should pay it. Most claims are of this type and are quickly resolved without the necessity of the surety conducting an investigation. Where the claim is
disputed or where the principal is financially unable to satisfy the claimed debt, whether disputed or not, then the surety must conduct a reasonable, good faith investigation of the claim. The investigation must seek relevant information from both the claimant and the principal.

The surety usually receives notice of a payment bond claim from the claimant. Occasionally, however, the surety will learn of claims from the obligee or the principal. Claims received directly from the claimant should generally be

FD002012

acknowledged within 14 days of receipt. Simultaneously, the principal should be contacted to determine its position on the claim.

**Relevant information to be obtained from the claimant may include:**

A statement of the nature of the claimed debt

Copies of documents showing the contractual basis of the claimed debt, such as subcontracts, leases or purchase orders, and any change orders or amendments thereto, or evidence of oral agreements

Copies of all invoices and statements of account

All delivery tickets for materials and equipment

Any correspondence related to the claimed debt

At the appropriate time, a properly sworn proof of claim, in the approved form (see Form \_\_\_\_), executed by the claimant or its authorized representative

**Relevant information that may be obtained from the principal:**

Written statement of its position with respect to the claim, supported by evidence.

Copies of any evidence of principal's contractual relationship with the claimant. e.g., subcontracts, purchase orders, leases, and all change orders, amendments and modifications)

Principal's statement of the claimant's account, supported by copies of invoices, pay requests, and check numbers and dates

Copies of any backcharges or other set offs to the claimant's account

Copies of any project records, such as daily logs and job meeting minutes

Copies of correspondence related to the claimant's account

**II b Personal Contact** - Personal contact includes not only face to face meetings but also telephonic communication. Not all claims require personal contact. Many payment bond claims can be handled by mail. In large and complex cases, personal contact may be essential to obtain relevant information and a fair understanding of the parties' positions. The file should document the dates and substance of all personal contacts.

In our present regional system there are a number of factors to consider in deciding how to make personal contact.

Size of the case. Generally, the larger the case, the more essential it is that face-to-face meetings occur with relevant parties. This is especially true in fidelity and contract surety cases.

Cost/distance. This is related to size. A small claim, for which payment is justified on the face of information in the file, may not require the personal contact of a visit, if the cost of travel to make the visit represents a substantial portion of the amount claimed. In general, this issue involves claims where the amount in controversy is less than $10,000.

Complexity. It is difficult to see how a complicated case can be properly handled via the telephone and mail.

Legal/regulatory/contract. It is possible that personal visits may be required by law, regulation or contracts. Note the AIA A312 performance bond form requirements.

Business considerations. Even though the amount of the claim may not warrant travel for personal contact, business considerations, such as maintaining relations with an agent or customer may warrant travel.

**II c Evaluation of Documentation** - The analysis of the information relevant to payment and performance bond claims may be simple and straight-forward, or difficult and complex. Some claims involve few issues; others are replete with intensive factual, legal and technical issues.

FD002013

The file should demonstrate by its contents that action taken - tender, takeover, furnishing financial assistance to a principal, payment, denial, currently no decision - was proper and justified. An explanation should be set forth in the file of the reasons, factual, contractual and legal, for the action taken. If the paper portion of the file contains fully explanatory documentation, then the comments in CUCM may refer to that documentation and be brief. If, however, the demand/exposure of the claim exceeds $500,000, a more extensive explanation in CUCM is necessary. The file should speak for itself. It is not required, however, that the claims handler fully recite in CUCM documents that self-explanatory.

Performance Bonds. Following is a checklist of some issues that commonly arise in the evaluation of performance bond claims and deserve consideration in many cases. The file should show consideration of these issues where appropriate. This list is not exclusive. Each case must be considered and evaluated on the basis of its own facts and circumstances. These and similar issues will require readings of the bond and the contract and an investigation of relevant facts.

> What events or occurrences trigger the surety's liability? Does the bond require a de facto and declared default? What acts or events constitute a default? Has the obligee specified the basis of the default? Read the bond and the contract.
>
> Has the obligee performed its obligations under the contract? If not, will the obligee's breaches relieve the surety of its duties under the bond? Some common obligee breaches are: nonpayment; changed or altered conditions; defective design documents; and negligent administration of the contract.
>
> Has the obligee terminated the bonded contract? If so, has it followed any termination procedures set forth in the contract?
>
> Does the principal have any legal or contractual defenses, such as substantial performance, waiver, estoppel, or accord and satisfaction?
>
> Are there any independent surety defenses applicable to the obligee's demand? These special defenses include: limitations (either contractual or statutory); negligent inspection; overpayment; maladministration of the contract; fraud; failure to mitigate; and the penal sum of the bond.

Payment Bond Claims. The investigation of payment bond claims requires consideration of the factual and legal contentions of the particular in conjunction with the coverage afforded by the bond and applicable statutory and decisional law. The following is a checklist of issues that commonly appear in the investigation of payment bond claims.

> Is the entity making the claim entitled to the protection of the bond? What is the relationship of the claimant with the principal? Is the entity a first, second or third tier claimant?
>
> Are there any other surety defenses, such as failure to give the surety and/or principal required notices or limitations?
>
> Are the type of labor and materials or other items claimed covered by the bond? In particular, consider whether there is coverage for: materials not incorporated into the work; amounts for equipment under lease-purchase agreements; insurance premiums; interest; attorneys' fees; and delay damages and lost profits?
>
> Does the principal have any defenses to the claim?

II d  Timely handling - Generally, the file should show that all correspondence received was responded to within 14 days of receipt in the regional claims office. However, not every piece of correspondence may require a response or a response within 14 days. There should be no undue delays in taking positions on issues related to claims. There are situations in which we are waiting for a response from the claimant so that no further action is warranted. State law and regulations, such as California's, need to be kept in mind and referred to in determining what is required.

II e  Settlement / Use of ADR (pre-litigation) - When the investigation is completed, the surety will notify the obligee or claimant of its decision. Settlements may take many forms. Claims may be paid in full or partially.

FD002014

Undisputed portions of claims should be paid. The party receiving the payment should execute an appropriate form of release. Circumstances will justify the terms and conditions of the release. The release may be unconditional and complete or conditional and subject to a reservation of rights as to certain issues. Releases executed by payment bond claimants should contain an assignment of their rights against the principal and the project. F&D's form of payment bond release and assignment is included as Form ___.

Effort should be made to advance the investigation so that settlement can be explored as early as possible in connection with each performance and payment bond claim. Factors to be taken into account in considering settlement include the relative merits of the respective claims and defenses and the potential cost of litigation. Our goal is to achieve the lowest possible total of loss and cost in fulfilling our obligations. The use of ADR, especially mediation, should be considered in all appropriate cases as an aid to settlement and a means to avoid litigation.

II f CBLEC Preparation - A CBLEC (Contract Bond Loss Estimate Computation) is needed in connection with all cases in which either or both the following conditions exist:

> completion losses are anticipated;

> a loss involving more than one payment bond claim on one project is anticipated.

The CBLEC is to be updated whenever the estimate changes by more than 10%. The CBLEC shall be in the Lotus 123 or other spreadsheet format currently used by the Fidelity and Surety Department.

II g Fraud Awareness - Watch for fraud indicators during coverage evaluation, claim investigation, negotiation and settlement. If, due to the presence of one or more fraud indicators, it appears that the claim may be fraudulent or exaggerated, the claim handler should consider referring the claim to the SIU. The presence of a fraud indicator does not necessarily mean that an insured has filed a fraudulent claim. If, however, in the claim handler's judgment, the claim does not seem legitimate, appropriate action should be taken. SIU may ask that statements be taken. Any statements to be taken should reflect all facts, whether favorable or unfavorable:

Prepare for statement taking by:

Knowing your case well;

Putting the statement giver at ease;

Determining the relationship of witnesses giving statements to the actual party(s) to the loss;

Making sure that you have all the information that the statement giver may need before taking the statement, i.e. dates, times, places, names, extent of damages, etc.

Prepare a list of defined key questions to ask.

Take thorough statements from anyone believed to have knowledge of any events relating to the coverage for a loss and / or the actual loss itself to allow for:

Clarification of facts and circumstances while they are fresh in the mind of the statement giver;

To have what it felt to be a false statement documented in the form of preserved evidence;

To serve as a permanent record of a person's version of an incident and its' related circumstances and / or damages.

To aid in further investigation by being used to

refresh one's memory
result in the development of new leads to be investigated
assist in determining if fraudulent activity exists
provide the bases or ground work for the Special Investigations Unit in evaluating and establishing the strengths of a case in terms of the existence or non-existence of fraudulent activity.

### Litigation / Tender of Defense

FD002015

III a  Prompt and Timely Handling of Legal Process - If the process is handled so that, through no act or omission of the claims attorney, no default is taken, then the requirement is met.

III b  Consideration of all Factors Required for Tender - In general, these factors are to be considered in determining whether to tender defense:

> the competency of principal's counsel in view of the amount in question, including whether any conflicts exist;

> whether principal has a good faith defense to the liability asserted by the plaintiff; and

> principal's ability, based on an evaluation of current financial information, to pay for its and F&D's expenses through trial and to stand between F&D and any loss, assuming the worst case, if there is an adverse judgment. In most cases, a simple checklist in the file can be used to show that these factors were considered.

III c  Use of a Proper Tender of Defense Letter - This requirement is met if the letter:

> is addressed to principal, copy to principal's counsel;

> states that the tender of defense of the action is made pursuant to the indemnity agreement;

> makes it clear that principal's counsel will represent and defend F&D's interests at the full cost and expense of the principal (and indemnitors, if it is appropriate that they be named in the letter);

> advises counsel, by way of the copy, that any and all pleadings must have the approval of F&D before they are filed;

> asks counsel to plead any special surety defenses, if any are apparent;

> stipulates that counsel is to provide F&D regular reports on the status of the matter; and provides a signature line for the principal's acknowledgment of the terms of the tender.

III d  Receipt and Approval of Pleadings Before Filing - All pleadings filed on behalf of F&D, including, but not limited to: answers, counterclaims (rarely should F&D be a party to a counterclaim), cross-claims, motions, briefs in support of motions. Not included are interrogatories and requests for production of documents, except those that are directed to F&D.

III e  Regular Periodic Reports for Counsel (Tender) - There should be a report at least every four months. If counsel is unresponsive to requests for reports, the file should show best efforts to get a response, repeated, perfunctory letters are not satisfactory. The file should reflect that telephone calls have been made. If counsel doesn't respond, the sensible thing to do is to contact principal. Repeated refusals to provide reports should result in the revocation of the tender.

## Litigation Management / Management of Outside Counsel

IV a  Evaluation of Need (Counsel) - As a general proposition, the retention of outside counsel is justified when the claims attorney cannot perform a critical function related to the handling of the claim, either because of lack of availability, or special skills. Except in cases wherein litigation has been filed against F&D, the file should reflect the reasons why outside counsel was hired. In general, factors to consider in making this judgment are:

> the cost benefit to be derived (viewed from the perspective of the outset of the case) from the employment of the outside professional in relation to the exposure present in the case;

> the lack of special skills needed by the claims attorney or home office claims counsel to perform the task for which the outside professional was retained;

> the availability/time resources of the claims attorney to perform the task for which the outside professional was retained. If this is the principal reason that outside counsel is retained, then the file should show that department management was consulted concerning the availability of other F&D personnel who could

FD002016

perform the necessary tasks. The regional manager should be consulted first regarding other personnel and if none are available, then the department manager should be contacted.

**IV b  Timely Referral (Counsel)** - This criterion is measured by answering the question: did F&D lose opportunities, options, credibility, or other strengths as a result of not employing outside counsel soon enough.

**IV c  Use of Engagement Letter** - The requirement is that, for every professional retained, the file must contain a letter which sets out with some specificity the scope of the professional's assignment. It is not satisfactory to write, "Here's our file." The minimal letter (minimal for meeting requirements) should request a budget (if necessary) and, in cases of attorneys with respect to litigation, the plan of action. Engagement letters to outside counsel should indicate that the assignment is made pursuant to the terms set our in our engagement policy for attorneys.

**IV d  Plan of Action (Counsel)** - Generally, this requirement applies only to matters involving litigation. The file should contain a letter that sets out a plan of action for dealing with the matter assigned to counsel. The claims person must work with outside counsel in the development of the plan and the plan should be modified as required.

**IV e  Preparation of Budget** - In accordance with our PPM, budgets are required only in those cases where the estimated cost of the services exceeds $20,000. A budget which meets requirements will substantially conform with the budget form we have published. The more serious the case, the more detailed the budget should be. The file should reflect that budgets are used and that billings are reviewed against budgets. The file should also reflect that the budgets are updated whenever the cost of the services rendered or to be rendered increased by an amount in excess of 10% of the budget then in place.

**IV f  Regular Periodic Reports** - In general, reports should be received from counsel at least every four months concerning the status of the matter. In certain very active, serious exposure cases, more frequent reports may be needed in order to achieve this rating. In a few cases, it may be acceptable for the period between reports to be longer than every four months. A report received by telephone is satisfactory, as long as the telephone report is noted in the file/CUCM.

**IV g  Review and Approval of Pleadings** - Requirements met by a letter showing that pleadings were received and approved. Approval can be made by a telephone conversation noted in the file/cucm.

**IV h  Timely, Thorough Review of Bills** - The requirement is that bills are paid within 30 days of receipt but are not paid blindly. There should be evidence that the bills were reviewed for reasonableness, accuracy and compliance with budget and policy before payment. If the bills are not in compliance with the budget or policy, then the file should reflect that the noncompliance was addressed by the claims person with the producer of the bill.

**IV i  Early Settlement / Use of ADR (litigation)** - Settlement possibilities should be explored as early as possible and the use of ADR should be considered in all appropriate cases to resolve litigation.

## Management of Other Professionals

**V a  Evaluation of Need** - As a general proposition, the retention of an outside professional is justified when the claims attorney cannot perform a critical function related to the handling of the claim, either because of lack of special skills, or availability. In general, factors to consider in making this judgment are:

> the cost benefit to be derived (viewed from the perspective of the outset of the case) from the employment of the outside professional in relation to the exposure present in the case;

> the competency of the claims attorney or home office claims counsel to perform the task for which the outside professional was retained;

> the availability/time resources of the claims attorney to perform the task for which the outside p7rofessional was retained. If this is the principal reason that the outside professional is retained, then the file should show that department management was consulted concerning the availability of other F&D personnel who could perform the necessary tasks. The regional manager should be consulted first regarding other personnel and if none are available, then the department manager should be contacted.

FD002017

**V b Timely Referral (Other)** - This criterion is measured by answering the question: did F&D lose opportunities, options, credibility, or other strengths as a result of not employing the outside professional soon enough.

**V c Use of Engagement Letter (Other)** - The requirement is that, for every professional retained, the file must contain a letter (or letters) which sets out with some specificity:
The scope of the professional's assignment. It is not satisfactory to write, "Here's our file (it is acceptable if the scope of services is confirmed to us from the outside professional);"
The letter should request a budget (if necessary);
Engagement letters to outside professionals should refer to our engagement policy. (Note: The engagement policy for consultants is being developed; this requirement will apply only for assignments made after the policy is published in the regional claim offices.)

**V d Preparation of Budget (Other)** - In accordance with our engagement policy, budgets are required in those cases where the scope of services exceeds $20,000. A budget which meets requirements will substantially conform with the budget form we have published. The more serious the case, the more detailed the budget should be. The file should reflect that budgets are used and that billings are reviewed against budgets. The file should also reflect that the budgets are updated whenever the cost of the services rendered or to be rendered increased by an amount in excess of 10% of the budget then in place.

**V e Regular Periodic Reports (Other)** - In general, reports from outside professionals, should be received at least every four months. In certain very active, serious exposure cases, more frequent reports may be needed in order to pass this category. Also, generally, claims attorneys should request reports from construction consultants employed in completion cases on at least a monthly basis.

**V f Timely, Thorough Review of Bills** - The requirement is that bills are paid within 30 days of receipt but are not paid blindly. There should be evidence that the bills were reviewed for reasonableness, accuracy and compliance with budget and policy before payment. If the bills are not in compliance with the budget or policy, then the file should reflect that the
noncompliance was addressed by the claims person with the producer of the bill.

## Procedures

**VI a Compliance with Reporting Requirements** - The claims handler shall adhere to the criteria for co-assignment of performance and payment bond claims as set forth in OPM ____. Co-assignment requests shall be made as soon as practicable by the claim handler.

**VI b Compliance with Discretionary Authority** - The file shall evidence that the claim handler had the requisite authority to take the courses of action and the financial actions (settlement offers, retention of outside professionals, payments and reserves) reflected in the file. The claim handler shall comply with the guidelines set forth in OPM _____ on discretionary authority. A claim handler who exceeds his/her authority should afterwards bring the matter to the attention of regional claim office management or departmental management, as the case may be, for explanation and justification. If management accepts *ex post facto* justification, the file must document such acceptance.

**VI c Setting Adequate Loss and Expense Reserves** - Reserves must be set as early as possible. using the best estimate of loss. Where a CBLEC is required, the information in the CBLEC will usually be the source of figures for reserving purposes. Reserves must be modified as soon as possible as further information regarding reasonable exposure for loss is developed. See OPM ___ for guidelines on reserving. The file should reflect the basis for the reserve and how the amount of the reserve was calculated. If the reserve is precautionary, the file/cucm should contain a memo that explains that the reserve is "without certainty of liability,...."

The standard established for setting reserves is as follows:

FD002018

- Contract Surety case, CBLECs will be prepared and initial reserves set within 60 days of notice that the contractor will not be able to pay bills or complete outstanding work. Reserves will be adjusted within 120 days after initial reserves are set. Reserves set shall be at least 75% of the ultimate paid. Dollars spent to resolve issues not known at the time that reserves were set should not be counted in determining adequacy of reserves.

**VI d  Proper Handling of Collateral** - The following requirements must be met, as applicable, if collateral is handled in connection with the claim :

proper transfer to Treasury Dept. (cash collateral and other property which is negotiable;

record of receipt; and

safekeeping of collateral;

**VI e  Adequate Memorialization of Telephone Calls** - All telephone calls and meetings should be memorialized at least in handwritten notes to file, or in CUCM. Letters and other correspondence may also serve to fulfill this purpose.

**VI f  Compliance with Other Notice Requirements** - Comply with notice requirements (e.g., notice to SBA, notice for F&D's automatic builders risk insurance coverage, etc.), where such requirements exist in connection with a claim.

**VI g  File Organization** - All files should demonstrate the following:

paper files must be in order with filing up to date;

subfiles should be used in cases where there is more than one payment bond claim or where there are performance bond and payment bond claims;

subfiles should be established for each payment bond claim, the CBLEC, payment requisitions, consultants' reports, attorneys'

reports, joint control accounts, and any other topic that will aid in the management and understanding of the large volume of information that can be produced in a contract surety case;

regular updating of the electronic file;

handwritten notes legible.

**VI h  Data Quality** - All files should demonstrate the following:

All required system data fields are completed accurately. The standard established is no more than one incorrect, or missing data element from the electronic claim file. Target data elements include, but are not limited to the following: policy number, val id, accident description codes, site codes where applicable, recovery indicator, key claim identifier where applicable.

## Salvage

**VII a  Timely Consideration of Salvage** - The claim handler must give early consideration as to how F&D will be reimbursed or indemnified in the event it is required to pay a loss. The should be evidence that the current financial condition of the principal was considered, including an investigation of any assets that appear on the most recent financial statement. If it does not appear that the principal will be able to hold F&D harmless, then there should be information as to the financial status of any other indemnitors. At the proper time, the principal and indemnitors should be advised in writing of the claim, of their obligations under the indemnity agreement, and if a loss payment

FD002019

appears imminent, demand made upon them to fulfill their obligations. See Forms ____, ____, and ____.

**VII b  Compliance with Statutes - Salvage -** We are concerned with the ability of the claims handler to be aware of and deal appropriately with deadlines such as bar dates in bankruptcies and statutes of limitations. Requirements are met or they are not.

**VII c  Evaluation of Settlement Possibilities - Salvage -** The file should show that reimbursement was discussed, or was attempted to be discussed, with the principal. Requirements are met if the file demonstrates a salvage plan was considered. In appropriate cases the file should show that Equifax reports or an asset check was obtained.

### Closure

**VIII a  Timeliness -** Attention must be given to the proper closure of both LAS and CMS files. An important factor is the timeliness of closing out files. Files on which liability issues have been resolved should not be allowed to remain open in the system. In most cases files should not remain open in the system for more than 90 days after all issues have been resolved. Attention must be given to properly closing the electronic file. As soon as possible, but in no event later than 90 days after all issues of liability have been resolved, any remaining loss and expense reserves must be taken down and the file closed.

**VIII b  Necessary Documentation -** Was appropriate closing documentation contained in the file. This may include:

    Releases

    Assignments

    Dismissals

    Judgments

    Vault records

    Collateral Agreements

    Joint Account reconciliation and closure documents.

FD002020